RECEIVED
FEB 01 2013
U.S.D.C. S.D.N.Y.
CASHIERS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MUSIKANT & DEUTSCH, D.M.D., P.C.,
ANGELO'S PIZZA, LOUIS DICARLO, and
CAROLINE F. STERN, D.D.S., P.C.,
individually and on behalf of all others
similarly situated,

                        Plaintiffs,

      v.

LEND LEASE CORPORATION LIMITED,
LEND LEASE (US) CONSTRUCTION
HOLDINGS INC., LEND LEASE (US)
CONSTRUCTION INC., LEND LEASE (US)
CONSTRUCTION LMB INC., PINNACLE
INDUSTRIES II, LLC, and EXTELL
DEVELOPMENT COMPANY,

                        Defendants.

Civil Action No. 12-CV-8207 (ALC) (KNF)

**FIRST AMENDED CLASS ACTION COMPLAINT**

      Plaintiffs Musikant & Deutsch, D.M.D., P.C. ("Musikant Deutsch"), Angelo's Pizza, Louis

DiCarlo, and Caroline F. Stern, D.D.S., P.C. ("Caroline Stern" and together with Musikant Deutsch,

Angelo's Pizza, and Louis DiCarlo, "Plaintiffs"), by their attorneys, make the following allegations

pursuant to the investigations of counsel and upon information and belief, except as to the allegations

specifically pertaining to themselves, which are based on personal knowledge:

### NATURE OF THE ACTION

      1.     This is a class action against Lend Lease Corporation Limited ("Lend Lease

Corp"), Lend Lease (US) Construction Holdings Inc. ("Lend Lease Construction Holdings"),

Lend Lease (US) Construction Inc. ("Lend Lease Construction"), Lend Lease (US) Construction

LMB Inc. ("Lend Lease Construction LMB," and together with Lend Lease Corp, Lend Lease Construction Holdings, and Lend Lease Construction, "Lend Lease"), Pinnacle Industries II, LLC ("Pinnacle"), and Extell Development Company ("Extell" and together with Lend Lease and Pinnacle, "Defendants") for their negligence and/or gross negligence in failing to safely prepare, maintain, operate, and secure the construction crane at the One57 residential development project located at 157 West 57th Street, New York, NY 10019 ("One57").

2.     On October 29, 2012, the long boom of the construction crane atop 157 West 57th Street collapsed causing an evacuation that forced neighbors from their homes and nearby businesses to shutter.  The evacuation continued for nearly a week as the boom hovered like a dagger over 57th Street.  The crane collapse and the ensuing week-long evacuation was a direct result of Defendants' failure to prepare, maintain, operate, and secure the crane to withstand the winds of the widely-anticipated Hurricane Sandy.  In fact, the construction crane was not adequately prepared, maintained, operated, and secured to be safely operated under any circumstances.

3.     As the collapsed crane hung over 57th Street, the NYC Fire Department ("FDNY") and the NYC Office of Emergency Management ("OEM") evacuated all buildings on the North and South sides of West 57th Street between Sixth and Seventh Avenues and from 56th to 59th Streets (the "Evacuation Zone").  Additionally, the surrounding streets were simultaneously closed to traffic.

4.     Due to the evacuation, Plaintiffs were effectively evicted and denied access from their homes and places of business from the time of the collapse on October 29, 2012 until November 5, 2012 (the "Evacuation Period").  Businesses within the Evacuation Zone were

unable to operate, perform under existing contracts, and enter new contracts during the
Evacuation Period.

5.      In addition to losing substantial income from the operation of Plaintiffs'
businesses during the Evacuation Period, the delay in re-opening Plaintiffs' businesses subjected
Plaintiffs to the loss of goodwill and reputation, thereby devaluing the worth of their businesses.

6.      Businesses and individuals within the Evacuation Zone were deprived of the use
and enjoyment of their offices and homes, respectively, despite still having to pay expenses
including but not limited to rent, payroll, and operating expenses.  Residents were unable to
access their cars to get to work, and perishable goods and business inventory spoiled.

## THE PARTIES

7.      Plaintiff Musikant & Deutsch D.M.D., P.C. is a New York private corporation
with a principal place of business at 119 West 57th Street, Room 700, New York, NY 10019.

8.      Plaintiff Angelo's Pizza is a New York corporation with a principal place of
business at 117 West 57th Street, New York, NY 10019.

9.      Plaintiff Louis DiCarlo is a citizen of New York, residing in New York County,
New York.

10.     Plaintiff Caroline F. Stern, D.D.S., P.C. is a New York professional corporation
with a principal place of business at 119 West 57th Street, Room 1004, New York, NY 10019.

11.     Defendant Lend Lease Corporation Limited is an Australian corporation with a
principal place of business at Level 4, The Bond 30 Hickson Road, Millers Point, NSW 2000,
Australia.  Lend Lease Corp is the contractor at One57, and oversees all construction-related
activities through its "Project Management and Construction" division.

12.     Defendant Lend Lease (US) Construction Holdings Inc. is a New York
corporation with a principal place of business at 200 Park Avenue, 9th Floor, New York, NY

3

10166. Lend Lease Construction Holdings is an operating entity in the "Project Management and Construction" division of Lend Lease Corp. Lend Lease Construction Holdings is responsible for construction activities at One57.

13.     Defendant Lend Lease (US) Construction Inc. is a Florida corporation with a principal place of business at 200 Park Avenue, 9th Floor, New York, NY 10166. Lend Lease Construction is an operating entity in the "Project Management and Construction" division of Lend Lease Corp. Lend Lease Construction is responsible for construction activities at One57.

14.     Defendant Lend Lease (US) Construction LMB Inc. is a New York corporation with a principal place of business at 200 Park Avenue, 9th Floor, New York, NY 10166. Lend Lease Construction LMB is an operating entity in the "Project Management and Construction" division of Lend Lease Corp. Lend Lease Construction LMB is responsible for construction activities at One57.

15.     Defendant Extell Development Company is a Delaware corporation with a principal place of business located at 805 Third Avenue, 7th Floor, New York, NY 10022. Extell is the developer of One57.

16.     Defendant Pinnacle Industries II, LLC is a New York limited liability company with a principal place of business at 260 Park Avenue, Harrison, NY 10528. Pinnacle owns and operates the construction crane at One57.

17.     At all relevant times hereto, Lend Lease Corp, Lend Lease Construction Holdings, Lend Lease Construction, Lend Lease Construction LMB, Pinnacle, and Extell acted in concert with, with the knowledge and approval of, and/or as the agent of each other, and within the course and scope of the agency, regarding the acts and omissions alleged.

4

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendants.

19.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391 because the crane collapsed in this District, Defendants Lend Lease Construction Holdings, Lend Lease Construction, Lend Lease Construction LMB Inc., and Extell have principal places of business in the District, and witnesses are likely to be found within the district.

## FACTS COMMON TO ALL COUNTS

### *One57*

20.     One57, formerly known as Carnegie 57, is a 90-story skyscraper currently under construction at 157 West 57th Street in Midtown Manhattan.  Construction on One57 began in April, 2009.  Upon completion in 2013, it will stand at 306 meters (1,004 feet) tall, making it one of the tallest buildings in New York City.  The building will have 135 residential units on top of a Park Hyatt Hotel with 210 rooms.  At the street level, One57 is contiguous to the neighboring buildings due to the limited space of the property.  One57 is surrounded by both residential and commercial buildings.

21.     Touted as being the "tallest and most expensive residential development in New York," the residential units at One57 are marketed as high-end luxury apartments and have already sold for prices of up to $90 million.  Extell is the developer of the property, Pinnacle owns and operates the construction crane, and Lend Lease is the contractor overseeing construction.

### Crane Collapse at One57

22.     On October 29, 2012 at approximately 2:35 p.m., a 45-ton construction crane at One57 partially collapsed in the midst of Hurricane Sandy. The collapse caused the long boom of the crane to dangle approximately 1,000 feet in the air above street level, sending debris and glass onto 56th Street below:



23.     Shortly thereafter, the FDNY and the OEM evacuated all buildings on the North and South sides of West 57th Street between Sixth and Seventh Avenues and from 56th to 59th Streets as a safety precaution out of fear that the long boom would fall to the ground. Guests in nearby hotels were forced to flee without their passports, area residents were locked out of their homes, and stores and business were shut down immediately as a result of the evacuation arising from the partial collapse of the crane. Patients in doctors' offices awaiting treatment were turned away.

24.     The collapsed part of the crane swayed several feet in both directions for hours, forcing officials to shut off all gas and steam to the area out of the fear that if the crane fell to the ground, it would pierce the concrete and create an explosion.

25.     The streets surrounding One57 were closed to traffic from the time of the collapse on October 29, 2012, until the end of the Evacuation Period.

**Defendants' Failure to Prepare, Maintain, Operate, and Secure the Construction Crane**

26.     Many construction cranes stood in Manhattan during Hurricane Sandy on October 29, 2012. But only one collapsed: the one which Defendants failed to safely and properly prepare, maintain, operate, and secure at One57.

27.     In preparation for the widely-anticipated storm, the boom of the crane should have been set at an appropriate angle, with the brake off, so that it could weathervane, or rotate along with the wind. These preparations are industry standard.

28.     The proper procedure for preparing a crane for the storm involves lowering the boom and releasing the brake. Defendants did not follow this procedure, however.

29.     Donald Trump, an experienced builder who has directed the construction of several high-rise buildings with the use of cranes, witnessed the crane both prior and subsequent to its collapse through his office window which was "just about even with th[e] crane." In his comments on CNBC, Mr. Trump commented that:

> I was watching it yesterday and they didn't tie it down...
> they had what's called the hook... with the ball, a very
> heavy ball, and that thing was blowing in the breeze like
> crazy, and then all of the sudden... the boom was really
> shaking, and then it blew over... Normally, what you do is
> you drop the boom onto the concrete, you drop the boom
> onto the building... but it was *up at a very high angle*, and
> it didn't take very far to go... That boom was almost
> straight up, so it didn't take that much wind to blow it
> back... Somebody should have known that you can't have
> it sitting straight up.[1]

---

[1] See http://video.msnbc.msn.com/cnbc/49608066#49608066 (emphasis added).

30.    A news piece on MSNBC covering the collapse of the crane cited Thomas Harth, a crane accident investigator, and "one of the Country's most renowned experts" in his belief that the collapse was "human error," saying, "The proof is in the video. It was at a high boom angle. They know it can be blown over." The same piece noted that all crane operators were told by the New York City Government to "secure their cranes" prior to Hurricane Sandy.[2]

31.    Defendants' negligent and/or grossly negligent failure to properly and safely prepare, maintain, operate, and secure the crane at One57 has been a common theme since it was erected. According to New York City Inspection Reports, Pinnacle has been fined several times for infractions concerning the construction crane at One57. In April 2012, Pinnacle was fined twice, once for "operation of [the construction] crane…in an unsafe manner," and the other for "failure to safeguard all persons & property." In August 2012, Pinnacle was also fined because the crane was "leaking hydraulic fluid." Defendants' negligent and/or grossly negligent failure to properly and safely prepare, maintain, operate, and secure the crane, particularly in advance of a well-publicized impending hurricane was both the but-for and proximate causes for Plaintiffs' injuries.

32.    In response to these and other incidents of negligence on the parts of Defendants, Forbes Magazine published an article on November 1, 2012 titled, *Inside Extell, the Immoral Developer Behind Hurricane Sandy's Dangling Crane*. The article's author lamented: "[h]ow a crane sitting atop what will soon be America's tallest residential building wasn't secured in front of a predictably destructive hurricane seemed surprising to me and everyone else in New York. Then I heard the Extell Development was behind the project. And I wasn't surprised at all."[3]

---

[2] *Id.*

[3] *See* http://www.forbes.com/sites/randalllane/2012/11/01/inside-extell-the-immoral-developer-behind-hurricane-sandys-dangling-crane/

8

33.    Lend Lease likewise recently admitted to fraud in April of 2012, and agreed to pay the U.S. Government $50 million in connection with its practice of adding time to laborers' timesheets from 1999-2009, whether or not the time had actually been worked.[4]

34.    Countless violations and instances of fraud by all the Defendants show a pattern of wanton disregard for the rights and property of others.

## FACTS CONCERNING THE CLASS REPRESENTATIVES

### Angelo's Pizza's Evacuation

35.    Angelo's Pizza is an Italian restaurant and pizzeria located adjacent to One57, and just steps away from the collapsed construction crane at One57.

36.    Angelo's Pizza was open for business on October 29, 2012, when the crane at One57 collapsed. That same day, shortly after the collapse, employees and customers were notified that they would have to evacuate the premises immediately.

37.    Angelo's Pizza's doors remained closed throughout the Evacuation Period, and the premises could not be accessed until the Evacuation Period ended.

38.    For the entire Evacuation Period, Angelo's Pizza was deprived of the use and enjoyment of its space despite having to pay rent, payroll, and other operating expenses.

39.    Moreover, approximately $30,000 of perishable food spoiled at the restaurant during the Evacuation Period since Angelo's Pizza's employees were unable to use the inventory or transfer perishables to another location.

40.    Angelo's Pizza also suffered lost profits and harm to goodwill and reputation as a result of its evacuation.

---

[4] See Construction Firm Bovis Lend Lease Admits to Massive Fraud,
    http://gothamist.com/2012/04/25/construction_firm_bovis_lend_lease.php

### *Musikant Deutsch's Evacuation*

41.   Musikant Deutsch is an endodontic practice located adjacent to One57, and just steps away from the construction crane.

42.   Musikant Deutsch has a large practice, consisting of five specialists, along with support staff, which treats approximately fifty patients each day.

43.   Musikant Deutsch has been operating at the same location for over thirty years. In that time, it has developed a large amount of goodwill within the community.

44.   Musikant Deutsch's specialty is emergency services. The offices are open and specialists remain on call 24 hours a day, seven day a week. From its inception decades earlier until October 29, 2012, not a single day passed in which the specialists at Musikant Deutsch were not on call to treat patients with emergency conditions.

45.   Musikant Deutsch's primary source of business comes from referrals from other dental professionals. Dentists typically diagnose a condition and refer patients to Musikant Deutsch for treatment. Additionally, dental professionals routinely refer patients to Musikant Deutsch for treatment when they will be on vacation, or their practices will not be operating for any reason. Musikant Deutsch also gets patients from repeat visits, and patients who have been recommended to their practice by other patients.

46.   Musikant Deutsch treats both walk-ins and scheduled patients.

47.   On October 29, 2012, at 2:35 p.m., patients were both undergoing treatment at Musikant Deutsch, as well as waiting to be treated.

48.   Shortly thereafter, Musikant Deutsch received word from the FDNY that their office needed to be evacuated immediately. Patients awaiting treatment, many of whom were in pain, were simply turned away and forced to go elsewhere.

49.     The specialists at Musikant Deutsch could not perform procedures on patients at any other location because of the necessity of using specialized microscopes, which were kept at their location, in the Evacuation Zone.

50.     For the entire Evacuation Period, Musikant Deutsch was deprived of the use and enjoyment of its offices despite having to pay rent, payroll, and other operating expenses.

51.     For the entire Evacuation Period, Musikant Deutsch was unable to see any patients. These patients ultimately had to go elsewhere for treatment for their emergency conditions. Musikant Deutsch lost substantial amount of income from not being able to treat these patients.

52.     Musikant Deutsch also lost equipment, including cements and irrigation solutions, that was being used to treat patients immediately prior to the evacuation.

53.     Because the lower half of Manhattan, as well as countless other areas in the vicinity lost power for the majority or all of the Evacuation Period, several dental professionals located in these areas attempted to refer their patients to Musikant Deutsch unsuccessfully.

54.     Musikant Deutsch's patients would have come in for treatment despite difficult weather and transportation conditions caused by Hurricane Sandy, since most of their patients have emergency conditions. In fact, Musikant Deutsch should have seen a substantial increase in business due to the fact that so many local areas were substantially damaged by the Hurricane, and several practices attempted to refer their patients to Musikant Deutsch.

55.     Moreover, Musikant Deutsch did not have the time or ability to cancel its appointments with scheduled patients for the next week. Because its databases were based in its office within the Evacuation Zone, Musikant Deutsch was unable to access the necessary information to cancel these appointments from any other location as well.

11

56.   Frustrated patients sent angry and helpless emails to Musikant Deutsch's emergency email system complaining of pain, and expressing confusion as to where its specialists were. Musikant Deutsch did not have access to these emails, however, because they were located in its offices, inside the Evacuation Zone.

57.   Word that Musikant Deutsch was not operating for the first time in over thirty years spread among patients and dental professionals, and dental professionals who had routinely referred patients to it now referred patients to other practices, thereby establishing new relationships with competitors.

58.   Since reopening after the Evacuation Period, Musikant Deutsch has seen a decrease in business due to the harm to its reputation and goodwill, and due to the increased exposure of its competitors to dental professionals who had routinely referred patients to it.

59.   The harm caused by Defendant's negligence and/or gross negligence to Musikant Deutsch's goodwill and reputation has significantly decreased the value of the company.

### *Louis DiCarlo's Evacuation*

60.   Plaintiff DiCarlo resides adjacent to One57 at 130 West 57th Street, Suite 11a, New York, NY. Plaintiff DiCarlo is employed as CEO of Shuella, Inc., a business that he operates out of an office in his Manhattan residence. Plaintiff DiCarlo does not have any other residence in the United States.

61.   Plaintiff DiCarlo witnessed the crane collapse from his window on October 29, 2012. Plaintiff DiCarlo was extremely terrified because he believed that the building adjacent to him was going to completely collapse, and that he might die. Shocked and afraid for his life, Plaintiff DiCarlo fled his building.

62.     At the street level, Plaintiff DiCarlo was told by New York City Police that he would have to evacuate the area immediately, and could not return to his residence for any reason.

63.     Plaintiff DiCarlo did not have his cell phone with him, or any identification, cash or other means of payment, or spare clothing.  In fact, Plaintiff DiCarlo was not even wearing a jacket, and was not appropriately dressed for the weather.

64.     Plaintiff DiCarlo left the Evacuation Zone and went to the Plaza Hotel, which was the only hotel at which Plaintiff DiCarlo could find a room.  The Plaza allowed him to stay and eat on credit.

65.     During the Evacuation Period, Plaintiff DiCarlo stayed at the Plaza Hotel, at a rate of $800 a day.

66.     In addition to the loss of use and enjoyment of his home and office, Plaintiff DiCarlo also suffered emotional distress and humiliation from the crane collapse.

67.     Moreover, approximately $250 of perishable food spoiled at Plaintiff DiCarlo's residence during the Evacuation Period.

### *Stern's Evacuation*

68.     Caroline F. Stern, D.D.S., P.C. ("Stern") is a general dentistry practice located adjacent to One57 at 119 West 57th Street, Room 1004, New York, NY, within the Evacuation Zone.

69.     Stern treats approximately 14 patients each day.

70.     On October 29, 2012, Stern was evacuated by the FDNY due to the crane collapse and was forced to cancel its scheduled appointments for the entire Evacuation Period.  Many of Stern's patients went elsewhere for treatment.

71.     Stern was deprived of its use and enjoyment of its office during the Evacuation Period, despite still having to pay rent, payroll, and other operating expenses. Stern also suffered a loss of income, contractual interference, and harm to its goodwill and reputation from not operating during the Evacuation Period.

## CLASS REPRESENTATION ALLEGATIONS

72.     Plaintiffs Angelo's Pizza, Musikant Deutsch, and Stern seek to represent a class defined as all businesses evacuated from the Evacuation Zone during the Evacuation Period ("The Evacuated Businesses Class").

73.     Plaintiff DiCarlo seeks to represent a class defined as all residents evacuated from the Evacuation Zone during the Evacuation Period ("The Evacuated Residents Class").

74.     Plaintiffs Angelo's Pizza, Musikant Deutsch and DiCarlo seek to represent a class defined as all persons or entities whose property located within the Evacuation Zone was destroyed or diminished in value as a result of the crane collapse and ensuing evacuation ("The Lost Property Class").

75.     Members of each Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of each Class number in the thousands. The precise number of Class members and their identities and citizenship are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail.

76.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to

a. Whether Defendants were negligent in failing to safely prepare, maintain, operate, and secure the construction crane at the One57.

b. Whether Defendants were grossly negligent in failing to safely prepare, maintain, operate, and secure the construction crane at the One57.

c. Whether Defendants were reckless in failing to safely prepare, maintain, operate, and secure the construction crane at the One57.

d. Whether Defendants intentionally failed to safely prepare, maintain, operate, and secure the construction crane at the One57.

e. Whether Defendants deprived Plaintiffs of their use and enjoyment of their residences and offices.

f. Whether Defendants caused Plaintiffs to spend money for alternative living and eating accommodations during the Evacuation Period.

g. Whether Defendants caused a loss of business, interfered with contracts, and injured the goodwill and reputation of Plaintiffs.

h. Whether Defendants caused the spoliation or loss of Plaintiffs' equipment, inventory, perishable goods or other personal property.

i. Whether Defendants created a private nuisance on Plaintiffs' property.

j. Whether Defendants created a public nuisance which particularly affected Plaintiffs property.

77. The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs maintained homes and offices within the Evacuation Zone during the Evacuation Period which they were precluded from accessing and using as a result of Defendants' negligence and/or gross negligence.

78.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

79.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**
**(Negligence)**

80.     Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

81.     Plaintiffs brings this Count I individually and on behalf of the members of each Class against all Defendants.

82.     The aforementioned injuries were caused by reason of the negligence of the Defendants, in the ownership, operation, maintenance, construction, management, outfitting, preparing, securing, and equipping of the aforementioned construction crane at One57.

83.     On October 29, 2012, Plaintiffs incurred damages including but not limited to loss of use and enjoyment of their homes and offices, costs incurred for accommodation arrangements, loss of economic profit, loss of equipment, inventory, perishable goods or other personal property, and damage of goodwill and reputation, as a result of the failure of all of the Defendants, and each of them, to properly and safely prepare, maintain, operate, and secure the construction crane at One57, and to provide safe equipment and a safe work place.

84.     Defendants and each of them, concurrently, jointly and severally breached their duties owed to Plaintiffs in failing to exercise reasonable care to avoid causing injury and nuisance to Plaintiffs' property, in failing to properly and safely prepare, maintain, operate, and secure the construction crane at One57, to provide safe equipment and a safe work place, in the failure to prepare and secure the long boom in anticipation of Hurricane Sandy, in failing to train employees in jobsite hazards, in failing to oversee and/or supervise and/or correct unsafe work area conditions, in failing to supervise properly, in failure to construct, equip, operate and conduct the manner and method of the work being performed at the aforementioned location, so as to provide reasonable and adequate protection to the interests of Plaintiffs and others similarly situated, and in otherwise being negligent, careless, and wantonly reckless, thereby entitling Plaintiffs to an award of compensatory and punitive damages.

## COUNT II
### (Gross Negligence)

85.     Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

86.     Plaintiffs bring this Count II on behalf of the members of each Class against all Defendants.

87.     Defendants were involved in ultra-hazardous activities involving construction at One57, in a densely populated area of Manhattan.

88.     Defendants knew that by taking shortcuts, failing to have properly trained personnel and proper equipment, failing to properly and safely prepare, maintain, operate, and secure their equipment, failure to properly prepare their equipment for the impending hurricane, and violating the applicable laws, rules, and regulations, they could endanger life and property of persons and businesses adjacent to One57 in the Evacuation Zone.

89.     By failing to put in place the proper safeguards to ensure that their crane and related construction equipment would not collapse, Defendants were grossly negligent.

90.     By reason of the foregoing, Defendants are strictly liable to Plaintiffs for all damages, including but not limited to loss of use and enjoyment of their homes and offices, costs incurred for accommodation arrangements, loss of economic profit, loss of equipment, inventory, perishable goods or other personal property, and damage of goodwill and reputation.  Defendants should be strictly liable to Plaintiffs for all compensatory, consequential, and punitive damages.

## COUNT III
### (Interference with Prospective Advantage)

91.     Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

92.     Plaintiffs bring this Count III on behalf of the members of the Evacuated Businesses Class against all Defendants.

18

93.     Defendants knew that businesses were being operated adjacent to One57, and those businesses were going concerns where Plaintiffs and others intended to enter into contracts to provide services for clients.

94.     The actions of Defendants interfered with these intended contracts between Plaintiffs and their clients, and were it not for Defendants' negligence and/or gross negligence, these contracts would have been entered into.

95.     The actions of Defendants were done wrongfully and were without justification.

### COUNT IV
### (Economic Loss of Business Profits)

96.     Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

97.     Plaintiffs bring this Count IV on behalf of the members of the Evacuated Businesses Class against all Defendants.

98.     Plaintiffs' businesses were growing and thriving with many different types of clientele.

99.     Plaintiffs' businesses were showing increasing profits and augmented goodwill as a result.

100.    As a result of Defendants' negligence and/or gross negligence, Plaintiffs were unable to reopen for business and lost significant profits and goodwill during the Evacuation Period.

101.    The loss of profits and goodwill is permanent and is certain and sufficiently specific to warrant recovery in damages.

## COUNT V
### (Property Damage)

102.   Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

103.   Plaintiffs bring this Count V individually and on behalf of the members of the Lost Property Class against all Defendants.

104.   As a result of Defendants' negligence and/or gross negligence in their failure to safely and properly prepare, maintain, operate, and secure the crane at One57, Plaintiffs lost equipment, inventory, perishable goods or other property2013.02.01 Final .

## COUNT VI
### (Public Nuisance)

105.   Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

106.   Plaintiffs bring this Count VI individually and on behalf of the members of each Class against all Defendants.

107.   Defendants' practices created a public nuisance as a result of their negligence and/or gross negligence in the preparation, maintenance, operation, and securing of the construction crane at One57.

108.   The crane collapse caused a severe danger to all the adjacent buildings and streets, necessitating the need for their evacuations.

109.   Defendants' failure to conform to industry standards and make appropriate preparations in advance of Hurricane Sandy equates to a wanton disregard of and indifference to the rights and safety of others, including Plaintiffs herein.

110.   While the entire New York City was harmed from Defendants' negligence and/or gross negligence since they were unable to travel on the nearby streets during the Evacuation

Period, Plaintiffs suffered a particular harm as a result of Defendants' conduct in that they were unable to access their homes and offices during the Evacuation Period.

## COUNT VI
### (Private Nuisance)

111.   Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

112.   Plaintiffs bring this Count VII individually and on behalf of the members of the Evacuated Businesses Class and Evacuated Residents Class against all Defendants.

113.   Defendants' practices created a private nuisance that has substantially interfered with Plaintiffs' use and enjoyment of their land as a result of Defendants' intentional conduct, recklessness, negligence and/or gross negligence in the preparation, maintenance, operation, and securing of the construction crane at One57.

114.   The crane collapse caused a severe danger to all the adjacent buildings and streets, necessitating the need for evacuation from Plaintiffs' land for the duration of the Evacuation Period.

## RELIEF DEMANDED

115.   WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

A.   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class members;

B.   For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

C.   For compensatory, consequential, and punitive damages in amounts to be determined by the Court and/or jury;

D.   For prejudgment interest on all amounts awarded;

E. For an order of restitution and all other forms of equitable monetary relief;

F. For injunctive relief as pleaded or as the Court may deem proper; and

G. For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Dated: February 1, 2013

Respectfully submitted,

BURSOR & FISHER, P.A.

By: _Scott A. Bursor_
Scott A. Bursor

Scott A. Bursor (SB1141)
Joseph I. Marchese (JM1976)
Neal J. Deckant (ND1984)
888 Seventh Ave
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: scott@bursor.com
        jmarchese@bursor.com
        ndeckant@bursor.com

*Attorneys for Plaintiffs*

22