

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MUSIKANT & DEUTSCH, D.M.D., P.C.,   :
ANGELO'S PIZZA, LOUIS DICARLO, and   :   Civil Action No. 12 CV 8207 (ALC)(KNF)
CAROLINE F. STERN, D.D.S., P.C., individually  :
and on behalf of all others similarly situated,  :
              :
      Plaintiffs,      :
              :
      -against-      :
              :
LEND LEASE CORPORATION LIMITED, LEND  :
LEASE (US) CONSTRUCTION HOLDINGS INC.,  :
LEND LEASE (US) CONSTRUCTION INC., LEND  :
LEASE (US) CONSTRUCTIOPN LMB INC.,   :
PINNACLE INDUSTRIES II, LLC, and EXTELL  :
DEVELOPMENT COMPANY,     :
              :
      Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## DEFENDANT, PINNACLE INDUSTRIES II, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

**Of Counsel:**

  **Richard W. Ashnault**

CERUSSI & SPRING
ATTORNEYS
ONE NORTH BROADWAY
WHITE PLAINS, NEW YORK 10601

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................ 1

NATURE OF ACTION AND RELEVANT FACTS ............................................... 1

ARGUMENT.............................................................................................. 3

   POINT I - Plaintiffs' Negligence Claims Are Based Solely On Economic Loss
   and Must Therefore Be Dismissed As A Matter Of Law ............................... 3

   POINT II - Plaintiff's Claim For Interference With Prospective Advantage
   Must Fail Because There Is No Allegation That Defendants Acted Intentionally
   Or Acted Solely Out Of Malice, Or Used Dishonest, Unfair, Or Improper Means ..... 11

   POINT III - Plaintiffs' Public Nuisance Claims Must Fail Because They
   Cannot Establish Negligence, And Do Not Allege Special Injuries Beyond
   Those Suffered By The Community At Large ............................................. 13

   POINT IV - Plaintiffs' Private Nuisance Claims Must Fail Because The Alleged
   Nuisance Is Claimed To Have Affected Three Separate Classes Of Plaintiffs,
   Each Of Which Purportedly Numbers "In The Thousands" ......................... 16

   POINT V - Plaintiffs' Complaint Should Be Dismissed Or At A Minimum
   Trimmed Of Its Many Irrelevant And Scandalous Allegations.................... 17

CONCLUSION........................................................................................ 21

## TABLE OF AUTHORITIES

**Page**

**Cases**

*532 Madison Avenue Gourmet Foods, Inc. v. Finlandia,*
96 N.Y.2d 280 (2001) .......................................................................5, 6, 7, 8, 9, 10, 14, 15

*Acquista v. New York Life Ins. Co.,* 285 A.D.2d 73, 83 (1st Dep't 2001)........................... 10

*Allstate Insurance Company v. Burger King Corp.,* 25 A.D.3d 472
(1st Dep't 2006) ........................................................................................................ 9

*Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) ................................................................. 3

*ATSI Communications Inc. v. The Shaar Fund, Ltd.,* 493 F.3d 87, 93
(2d Cir. 2007)............................................................................................................... 3

*Beck v. FMC Corp.,* 53 A.D.2d 118 (4th Dep't 1976),
*affd* 42 N.Y.2d 1027 (977) ...................................................................................... 6, 7

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).......................................................... 3

*Carvel Corp. v. Noonan,* 350 F.3d 6, 17 (2d Cir. 2003) ...................................................... 12

*Cedar & Washington Assocs., LLC v. Bovis Lend Lease LMB, Inc.,*
95 A.D.3d 448, 449 (1st Dept. 2012)...................................................................... 17

*Chemical Bank v. Stahl,* 255 A.D.2d 126, 127 (1st Dep't 1996) ....................................... 13

*Copart Industries v. Consol. Edison Co. of NY,* 41 N.Y.2d 564, 569 (1977) ....................... 13

*Cruz v. TD Bank,* 855 F.Supp.2d 157 (S.D.N.Y. 2012) ........................................................ 11

*Dillon v. City of New York,* 261 A.D.2d 34, 41 (1st Dep't 1999) ....................................... 10

*Dunlop Tire & Rubber Corp. v. FMC Corp.,* 53 A.D.2d 150 (4th Dep't 1976)...................... 6

*Gleason v. Chain Service Restaurant,* 300 F. Supp. 1241, 1257 (S.D.N.Y 1969).......... 19, 20

*Hamilton v. Beretta Corp.,* 96 N.Y.2d 222 (2001)................................................................. 4

*Hanna v. Motiva Enterprises, LLC,* 839 F. Supp. 2d 654 (S.D.N.Y. 2012) ................... 14, 15

*Johnson v. Fankell,* 520 US 911, 916 (1997) .........................................…... 4

*Kennedy v. McKesson Co.,* 58 N.Y.2d 500, 506 (1983) .........................................…. 9

*Kirsch v. Liberty Media Corp.,* 449 F.3d 388, 400 (2d Cir. 2006). ......................……. 12

*Lee v. Bankers Trust Co.,* 166 F.3d 540, 543 (2d Cir. 1999) ……............................... 3

*Lipsky v. Commonwealth United Corp.*, 551 F. 2d 887, 894 (2d Cir. 1976)...................... 18

*Lonesome v. Lebedeff, 141 F.R.D. 397, 398* (E.D.N.Y. 1992) ...................……….. 19

*Mullaney v. Wilbur,* 421 US 684, 691 (1975) ..................................................... 4

*New York ex rel. Spitzer v. Operation Rescue Nat'l,* 273 F.3d 184, 201
    (2d Cir. 2001)................................................................................ 16

*Philadelphia Indemnity Insurance Co. v. Extell West 57*[th] *Street, LLC, et al.*
    (Sup Ct. New York Cty. 2014) .......................................................... 8

*Roundabout Theatre Company v. Tishman Realty & Construction Co.,*
    302 A.D.2d 272 (1st Dep't 2003)...................................................... 11

*Salahuddin v. Cuomo,* 861 F. 2d 40 (2d Cir. 1988) ...................................... 18, 19

*Sheila C. v. Povich*, 11 A.D.3d 120, 130-131 (1st Dep't 2004).......................... 10

*Strauss v. Belle Realty Co.,* 98 A.D.2d 424, 428 (2d Dep't 1983);
    *aff'd* 65 N.Y.2d 399 (1985) ......................................................... 4, 10

*Tannus Corp. v. City of New York,* 279 F.Supp.2d 305, 312 (S.D.N.Y. 2003) .................... 15

*Travelers Casualty and Surety Company v. Dormitory Authority-State of
    New York,* 734 F.Supp.2d 368, 378 (S.D.N.Y. 2010)...................................... 11

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of defendant, PINNACLE INDUSTRIES, II, LLC (hereinafter "Pinnacle") in support of its motion for an Order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing plaintiffs' First Amended Class Action Complaint on the grounds that it fails to state a claim upon which relief can be granted. In the alternative, Pinnacle seeks dismissal of plaintiffs' First Amended Class Action Complaint pursuant to Rules 12(f) and 8 of the Federal Rules of Civil Procedure and/or an Order striking paragraphs designated in POINT VI herein as immaterial and/or scandalous, together with costs and attorney's fees and such other and further relief as this Court deems just, proper and equitable.

## NATURE OF ACTION AND RELEVANT FACTS

For the purposes of this motion, the relevant procedural and factual history are set forth in the accompanying affidavit of Richard Ashnault, Esq., ("Ashnault Affidavit") and the Exhibits annexed thereto. In the interest of judicial economy, they will not be repeated in detail here. Briefly, this is a proposed Class Action to recover damages allegedly arising out of an evacuation of certain areas of Manhattan following a partial crane collapse in the wake of Hurricane Sandy. On October 29, 2012, the arm of a tower crane located at 157 West 57th Street ("One57") in Manhattan partially collapsed. In response, the New York City Fire Department (FDNY) and the New York City Office of

Emergency Management (OEM) "evacuated all buildings on the North and South sides of West 57th Street between Sixth and Seventh Avenues and from 56[th] to 59[th] Streets" in what plaintiffs have dubbed the "Evacuation Zone." Exhibit "C," ¶ 3.

Hurricane Sandy caused widespread devastation across the Northeast. All New York City Public Schools were closed between October 30, 2012 and November 2, 2012, and many remained closed for far longer. The New York Stock Exchange was shut down for two days for the first time since 1888. Many areas of the City were under mandatory evacuation orders preceding the storm and the entire transportation system was shut down citywide. Lower Manhattan and several other areas within the five boroughs of the City were flooded and evacuated after the storm. By the evening of October 29, 2012, at least five people had perished in New York State as a result of the storm.[1] Millions of people lost power and some remained without heat or electricity for weeks. In short, Hurricane Sandy caused substantial personal injuries and property damage, and untold economic damages.[2]

For the reasons set forth below, none of the theories of liability in the Complaint are properly pled, and all must be dismissed as a matter of law.

---

[1] James Barron, Storm Barrels Through Region, Leaving Destructive Path, The New York Times, October 29, 2012. Available at http://www.nytimes.com/2012/10/30/us/hurricane-sandy-churns-up-east-coast.html?pagewanted=all (last accessed February 28, 2013).

[2] Reuters, Sandy Could Rank As Fifth-Costliest Hurricane In History: Early Analysis. Available at http://www.huffingtonpost.com/2012/10/30/hurricane-sandy-cost-losses-history_n_2043930.html (last accessed February 28, 2013).

## ARGUMENT

## POINT I

### Plaintiffs' Negligence Claims Are Based Solely On Economic Loss And Must Therefore Be Dismissed As A Matter Of Law

The standards applicable to a motion to dismiss under FRCP § 12(b)(6) are well known.  A court reviewing a complaint in the context of such a motion must consider all material factual allegations as true and draw all reasonable inferences in favor of the plaintiff.  *Lee v. Bankers Trust Co.,* 166 F.3d 540, 543 (2d Cir. 1999).  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through 'factual allegations sufficient to raise a right to relief above the speculative level.'"  *ATSI Communications Inc. v. The Shaar Fund, Ltd.,* 493 F.3d 87, 93 (2d Cir. 2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009).  Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Id.,* at 1940 (citing *Twombly,* 550 U.S. at 570).   "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss," and "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 1950.

3

In rendering its decision of the motions to dismiss now before this Court, it is necessary for this Court to interpret state law pertaining to negligence and the economic loss doctrine.  In *Johnson v. Fankell*, 520 US 911, 916 (1997), the Supreme Court held that a federal court is bound by the decision of the highest state court to have ruled on a question of state law.  As the Supreme Court of New York County has ruled on many of the precise issues before this Court, and upon the same factual pattern presented in this case, it is respectfully submitted that this Court should reach the same decision as Justice Engoron and dismiss plaintiffs' complaint in its entirety.  *See* Exhibit E.  *See also Mullaney v. Wilbur*, 421 US 684, 691 (1975) ("This Court, however, repeatedly has held that state courts are the ultimate expositors of state law,...and that we are bound by their constructions except in extreme circumstances not present here) (citation omitted)."

The issue of duty in a negligence claim was aptly described by the New York Court of Appeals in *Hamilton v. Beretta Corp.*, 96 N.Y.2d 222 (2001) as follows:

> The threshold question in any negligence action is: does defendant owe a legally recognized duty of care to plaintiff?  Courts traditionally "fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability" (*Palka v. Servicemaster Mgt. Servs. Corp.*, 83 N.Y.2d 579, 586 [1994]; *see also, Strauss v. Belle Realty Co.*, 65 N.Y.2d 399, 402-403 [1985]). Thus, in determining whether a duty exists, "courts must be mindful of the precedential, and consequential, future effects of their rulings, and `limit the legal consequences of wrongs to a controllable

4

degree'" (*Lauer v. City of New York,* 95 N.Y.2d 95, 100 [2000] [quoting *Tobin v. Grossman,* 24 N.Y.2d 609, 619 (1969)]).

Foreseeability, alone, does not define duty—it merely determines the scope of the duty once it is determined to exist (*see, Pulka v. Edelman,* 40 N.Y.2d 781, 785, [1976] *rearg denied* 41 N.Y.2d 901 [1977]; *see also, Eiseman v. State of New York,* 70 N.Y.2d 175, 187 [1987]). The injured party must show that a defendant owed not merely a general duty to society but a specific duty to him or her, for "[w]ithout a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm" (*Lauer, supra,* at 100). That is required in order to avoid subjecting an actor "to limitless liability to an indeterminate class of persons conceivably injured by any negligence in that act" (*Eiseman, supra,* at 188). Moreover, any extension of the scope of duty must be tailored to reflect accurately the extent that its social benefits outweigh its costs (*see, Waters v. New York City Hous. Auth.,* 69 N.Y.2d 225, 230 [1987]).

*Id.,* at 232.

In the seminal case of *532 Madison Avenue Gourmet Foods, Inc. v. Finlandia,* 96 N.Y.2d 280 (2001), the New York Court of Appeals prohibited recovery in three separate appeals under remarkably similar circumstances as those alleged here.  In the first-named case of *532 Madison* and the companion case of *5th Ave. Chocolatiere v. 540 Acquisition Co.,* an office building under renovation partially collapsed onto Madison Avenue and 55th Street.  City officials closed fifteen blocks around the building for about two weeks. *Id* at 286.  Plaintiffs, including a prospective class of Manhattan businesses "bounded geographically on the west by Fifth Avenue, on the east by Park Avenue, on the north by 57th Street and on the South by 42nd Street," sued to recover damages arising from the closure of the streets adjacent to their businesses. *Id.*  The third appeal

decided under *532 Madison* was captioned *Goldberg Weprin & Ustin v. Tishman Constr.,* which involved an elevator tower collapse in Times Square. In that case, the City prohibited all traffic in a wide area of midtown Manhattan and also evacuated nearby buildings for varying time periods. *Id.,* at 287. Plaintiffs sought damages for economic loss on behalf of themselves and a proposed class "of all persons in the vicinity of Broadway and 42nd Street, New York, New York, whose businesses were affected and/or caused to be closed" as well as a subclass of area residents who were evacuated from their homes. *Id.* Gross negligence, strict liability and nuisance causes of actions were alleged.

In determining that the defendants owned no duty to the plaintiffs and dismissing the negligence claims, the *532 Madison* Court held that "...limiting the scope of defendants' duty to those who have, as a result of these events, suffered personal injury or property damage—as historically courts have done—affords a principled basis for reasonably apportioning liability." *Id.,* at 291-292.

In so holding, the Court of Appeals distinguished *Beck v. FMC Corp.,* 53 A.D.2d 118 (4th Dep't 1976), *affd* 42 N.Y.2d 1027 (977) and *Dunlop Tire & Rubber Corp. v. FMC Corp.,* 53 A.D.2d 150 (4th Dep't 1976). Both of those cases arose out of an explosion at defendant FMC's chemical manufacturing plant. The Court noted that the explosion "caused physical vibrations, and rained stones and debris onto plaintiff Dunlop Tire's nearby factory. The blast also caused a loss of electrical power - by destroying towers

6

and distribution lines owned by a utility - to both Dunlop Tire and a Chevrolet plant located one and one-half miles away." *532 Madison, supra,* 96 N.Y.2d at 290.  The Court noted that both establishments suffered temporary closure after the accident.  The plaintiffs in *Beck* sought damages for lost wages caused by the plant closure, and plaintiff Dunlop Tire sought recovery for economic damages and property damage emanating from the blast.  *Id.*

The *532 Madison* Court stressed the distinction between the plaintiffs in *Dunlop Tire* and those in *Beck,* noting that the *Dunlop Tire* plaintiffs sustained property damage resulting from "direct physical contact." *Id.*  Indeed, the Appellate Division in *Dunlop Tire* had specifically held that "the amended complaint states facts entitling plaintiff to recover for damage due to flying debris and concussion from the blast." *Dunlop Tire, supra,* 53 A.D.2d at 152.  On the other hand, confirming that the *sine qua non* of such a claim is the physical intrusion onto the plaintiff's property, the *Beck* court expressly declined "to create a new cause of action, independent of direct physical injury...." *Beck, supra,* 53 A.D.2d at 121.

A noted by the Court of Appeals in *532 Madison,* "[t]he *Beck* plaintiffs...could not state a cause of action, because, to extend a duty to defendant FMC would, like the rippling of the waters, [go] far beyond the zone of danger of the explosion, to everyone who suffered purely economic loss." *532 Madison, supra,* 96 N.Y.2d at 290 (internal quotations and citation omitted).

In the case at bar, there is no allegation whatsoever of any physical intrusion onto any of the plaintiffs' properties.  Consequently, as was the case in all three *532 Madison* appeals, the plaintiffs fall outside of the scope of any duty owed by the defendants and there can be no recovery by the plaintiffs for the economic damaged alleged.

The loss of perishable food and "cements and irrigation solutions" as alleged in the Complaint are quite simply not property damages resulting from direct physical contact as required under New York Law.  In *Philadelphia Indemnity Insurance Co. v. Extell West 57th Street, LLC, et al.* (Sup Ct. New York Cty. 2014), Justice Engoron noted that the Court of Appeals "made clear (in *532 Madison Avenue*) that the Court had no intention of extending the concept of 'property damage' to include loss or spoilage of food."  *See* Exhibit E at p. 2.  Indeed, the defendants in *Goldberg Weprin* noted in their appellate brief that one of the plaintiffs claimed property damage in the form of "a burned out light bulb, a wilted plant and spoiled milk" in an effort to satisfy this necessary element of his claim.  1998 NY App. Div. Briefs 603588, *8; 1999 NY App. Div. Briefs LEXIS 10, **19.  The *Goldberg Weprin* defendants' appellate brief included the following quote from the lower court's decision:

> In this action, there are no allegations of physical damage (other than nominal assertions that milk spoiled and plants died from lack of watering). Indeed, this case represents an even more attenuated chain of causation.  The plaintiffs do not allege that they were blocked from their workplaces by the collapsed elevator, but that a third party, the City of New York, prevented their access by closing streets because, according to

its judgment, conditions were unsafe. This is even further removed from the situations...where the physical consequences of the defendants' negligence prevented the plaintiffs from conducting their business.

1998 NY App. Div. Briefs 603588, *16; 1999 NY App. Div. Briefs LEXIS 10, **32.

Similarly, here the plaintiffs claim only indirect loss of property caused not by any actual physical intrusion onto their property, but rather due to the decision of City officials to evacuate due to a perceived danger. As in *Goldberg Weprin* and *Philadelphia Indemnity*, this is not a case in which the physical consequences of the defendants' alleged negligence prevented the plaintiffs from doing anything. The "minimal assertions" of the spoilage of perishable foods and loss of "cements and irrigation solutions" that are claimed here can fare no better than the inadequate allegations of physical damage at issue in *532 Madison*.

The allegations of personal injury sustained by DiCarlo are a similarly insufficient basis to prop up the otherwise unsustainable claims of economic damages. It is fundamental that "there is no duty to protect from emotional injury a bystander to whom there is otherwise owed no duty." *Kennedy v. McKesson Co.*, 58 N.Y.2d 500, 506 (1983). Here, as noted extensively above, there is no duty flowing from the defendants in favor of DiCarlo. Further, any alleged emotional trauma "caused by displacement from [DiCarlo's] home...is a consequential — not a direct — result of any negligence, and is therefore not compensable." *Allstate Insurance Company v. Burger King Corp.*, 25 A.D.3d 472 (1st Dep't 2006).

In addition, DiCarlo's "personal injury" claim sounds in negligent or intentional infliction of emotional distress. As such, it "must be supported by allegations of conduct by the defendants so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Sheila C. v. Povich*, 11 A.D.3d 120, 130-131 (1st Dep't 2004). *See also, Dillon v. City of New York,* 261 A.D.2d 34, 41 (1st Dep't 1999); *Acquista v. New York Life Ins. Co.,* 285 A.D.2d 73, 83 (1st Dep't 2001). The allegations of the Complaint clearly fall short of this exacting standard.

For the same reasons, the gross negligence claims must be dismissed. As noted by the Court of Appeals in *532 Madison, supra,* "[a]bsent a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." *Id.,* 96 N.Y.2d at 289. "That [a defendant] may have been grossly negligent is not relevant in defining the scope of its duty…, but only in determining the consequences which result from the breach of a duty owed. Without duty, there can be no breach of duty, and without breach of duty there can be no liability." *Strauss v. Belle Realty Co.,* 98 A.D.2d 424, 428 (2d Dep't 1983); *aff'd* 65 N.Y.2d 399 (1985).

Stripped of the embellishments added to the Complaint by the plaintiffs in an attempt to stave off dismissal, the claims in this matter are clearly based solely upon economic loss. Since plaintiffs have failed to provide any plausible claim for any

damages beyond economic loss, their Complaint runs afoul of New York's economic loss doctrine.  *See* Exhibit E*; Travelers Casualty and Surety Company v. Dormitory Authority-State of New York,* 734 F.Supp.2d 368, 378 (S.D.N.Y. 2010) (New York's economic loss doctrine is a jurisprudential principle that a plaintiff cannot recover in tort for purely economic losses caused by the defendant's negligence.); *Cruz v. TD Bank*, 855 F.Supp.2d 157 (S.D.N.Y. 2012) (New York applies the economic loss doctrine to negligence claims. This doctrine prevents a plaintiff from recovering purely economic losses in a negligence action.); *Roundabout Theatre Company v. Tishman Realty & Construction Co.*, 302 A.D.2d 272 (1st Dep't 2003) (It is now clear that defendants' duty of care extended only to those who, as a result of this construction disaster, suffered personal injury or property damage, and not to those who…suffered only economic loss).  Therefore, plaintiffs' negligence claims fail to state a claim upon which relief can be granted and must be dismissed as a matter of law.


### POINT II

**Plaintiff's Claim For Interference With Prospective Advantage
Must Fail Because There Is No Allegation That Defendants Acted Intentionally
Or Acted Solely Out Of Malice, Or Used Dishonest, Unfair, Or Improper Means**

Count III of the Complaint is based on alleged interference with prospective economic advantage.  Exhibit "C," ¶s 91-95.  However, plaintiffs fail to plead the requisite elements of the cause of action asserted.

"To prevail on such a claim, a plaintiff in New York must prove that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003). *See also, Kirsch v. Liberty Media Corp.,* 449 F.3d 388, 400 (2d Cir. 2006).

Here, plaintiffs allege that defendants knew generally that "businesses were being operated adjacent to One57, and those businesses were going concerns where Plaintiffs and others intended to enter into contracts..." Exhibit "C," ¶ 93. Plaintiffs go on to claim that "[t]he actions of Defendants interfered with these intended contracts between Plaintiffs and their clients, and were it not for Defendants' negligence and/or gross negligence, these contracts would have been entered into." Exhibit "C," ¶ 94.

Glaringly absent from the allegations of the Complaint are any claims of intentional conduct on the part of the defendants, or that they acted solely out of malice, or used dishonest, unfair, or improper means. Indeed, the interference with prospective economic advantage claim is expressly based on "negligence and/or gross negligence." As such, the Complaint fails to allege the requisite elements of the cause of action, and the claim must be dismissed as a matter of law.

## POINT III

### Plaintiffs' Public Nuisance Claims Must Fail Because They Cannot Establish Negligence, And Do Not Allege Special Injuries Beyond Those Suffered By The Community At Large

Count VI of the Complaint asserts a claim sounding in public nuisance. Specifically, plaintiffs allege that as a result of defendants' "negligence and/or gross negligence," they suffered "a particular harm…in that they were unable to access their homes and offices during the Evacuation Period." Exhibit "C," at ¶ 110. Again, the allegations of the Complaint fail to properly allege any facts to support the requisite elements of such a claim. The cause of action sounding in public nuisance must therefore be dismissed.

"A nuisance, either public or private, based on negligence and whether characterized as either negligence or nuisance, is but a single wrong, and whenever a nuisance has its origin in negligence, negligence must be proven." *Copart Industries v. Consol. Edison Co. of NY*, 41 N.Y.2d 564, 569 (1977) (internal quotation marks and citation omitted).

As noted above at length, plaintiffs cannot establish the elements of negligence, since defendants owed no duty to them. Consequently, whether stated in terms of negligence or nuisance, plaintiffs' claims constitute "but a single wrong" and the failure of one cause due to the fact that defendants owed plaintiffs no duty mandates the failure of the other. *Chemical Bank v. Stahl,* 255 A.D.2d 126, 127 (1st Dep't 1996)

(Plaintiff's third cause of action alleging an entitlement to special damages by reason of

defendant's creation of a public nuisance was properly dismissed, since the alleged

damages are merely for economic loss…and not for personal injuries or property

damage).

Further, in *Hanna v. Motiva Enterprises, LLC,* 839 F. Supp. 2d 654 (S.D.N.Y. 2012),

the Court addresses a claim for public nuisance as follows:

> "A public, or as sometimes termed a common, nuisance is an offense
> against the State and is subject to abatement or prosecution on
> application of the proper governmental agency." *Copart Indus., Inc. v.
> Consol. Edison Co. of N.Y.,* 41 N.Y.2d 564, 568, 394 N.Y.S.2d 169, 362
> N.E.2d 968 (1977). "A public nuisance exists for conduct that amounts to a
> substantial interference with the exercise of a common right of the public,
> thereby offending public morals, interfering with the use by the public of a
> public place or endangering or injuring the property, health, safety or
> comfort of a considerable number of persons." *532 Madison Ave. Gourmet
> Foods, Inc. v. Finlandia Ctr., Inc.,* 96 N.Y.2d 280, 292, 727 N.Y.S.2d 49, 750
> N.E.2d 1097 (2001). "A public nuisance is actionable by a private person
> only if it is shown that the person suffered special injury beyond that
> suffered by the community at large." *Id.*

*Id. at 672.*

Examination of *532 Madison* in this context is instructive.  There, the Court

addressed "whether plaintiffs have suffered a special injury *beyond that of the*

*community* so as to support their claims for public nuisance."   *532 Madison,*

*supra,* 96 N.Y.2d at 293 (emphasis added).  The Court found no such injury:

> As the trial court in *Goldberg Weprin* pointed out, though different in
> degree, the hot dog vendor and taxi driver suffered the same kind of injury
> as the plaintiff law firm.  Each was impacted in the ability to conduct
> business, resulting in financial loss.  When business interference and

> ensuing pecuniary damage is "so general and widespread as to affect a whole community, or a very wide area within it, the line is drawn" (Prosser, *supra*, at 1015).   While the degree of harm to the named plaintiffs may have been greater than to the window washer, per diem employee or neighborhood resident unable to reach the premises, in kind the harm was the same.

*Id.  See also, Tannus Corp. v. City of New York,* 279 F.Supp.2d 305, 312 (S.D.N.Y. 2003) ("Plaintiffs have not made factual allegations that, if proven, would qualify as a particularized injury suffered by the plaintiffs beyond that suffered by the public"); *Hanna, supra,* 839 F.Supp.2d at 672 ("A public nuisance is actionable by a private person only if it is shown that the person suffered special injury beyond that suffered by the community at large"); *Roundabout Theatre, supra,* 302 A.D.2d at 272 ("Plaintiff has no cause of action for public nuisance because the economic injury caused by cancellation of its productions, while perhaps greater in degree than that sustained by other businesses in the community at large, was not different in kind").

Here, as in *532 Madison,* the alleged damages may be different in degree than those sustained by the community at large, but they are not different in kind.  The closures of which the plaintiffs complain "caused the same sort of injury to the communities that live and work in those extraordinarily populous areas." *532 Madison, supra,* 96 N.Y.2d at 293.  The mere allegation that plaintiffs were unable to access their homes and offices does not convey standing to bring a public nuisance claim, since the alleged lack of access to their property alleged

by the plaintiffs is at best different only in degree -- not in kind -- from the impact

of the general public's lack of access to the Evacuation Zone.

Thus, plaintiffs' Complaint fails to state a cause of action under a public

nuisance theory, and Count VI must therefore be dismissed.

## POINT IV

### Plaintiffs' Private Nuisance Claims Must Fail Because The Alleged Nuisance Is Claimed To Have Affected Three Separate Classes Of Plaintiffs, Each Of Which Purportedly Numbers "In The Thousands"

It is widely recognized that a private nuisance is one in which the harm

complained of affects a small number of individuals, if not a single one.  Under New York

law, "a private nuisance threatens one person or a relatively few, an essential feature

being an interference with the use or enjoyment of land. It is actionable by the

individual person or persons whose rights have been disturbed." *Copart, supra,* 41

N.Y.2d at 568.  On the other hand, "a public nuisance consists of conduct ... which

[offends or interferes with] the public in the exercise of rights common to all, in a

manner such as to ... interfere with use by the public of a public place or endanger or

injure the property, health, safety or comfort of a considerable number of persons."

*New York ex rel. Spitzer v. Operation Rescue Nat'l,* 273 F.3d 184, 201 (2d Cir. 2001).

Private nuisance claims have repeatedly been dismissed in cases in which "the

alleged nuisance affects a wide area and adjacent properties," as is claimed in the

instant case. *Cedar & Washington Assocs., LLC v. Bovis Lend Lease LMB, Inc.*, 95 A.D.3d 448, 449 (1st Dept. 2012).

Here, plaintiffs expressly state in the Complaint that the "[m]embers of each Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of each Class number in the thousands." Exhibit "C," ¶ 75. The fact that the plaintiffs have styled this proceeding as a proposed class action underscores the inherent contradiction in simultaneously asserting a cause of action reserved for "one person or a relatively few." *Copart, supra.* Conversely, the allegations in the Complaint of the breadth of the alleged nuisance are more akin to a public nuisance claim affecting "a considerable number of persons" as contemplated by *Operation Rescue, supra,* minus, of course, the requisite special injury as addressed in Point III, above.

Therefore, plaintiffs' Complaint, insofar as Count VII asserts private nuisance claim, fails to state a cause of action and must be dismissed.

### POINT V

### Plaintiffs' Complaint Should Be Dismissed Or At A Minimum Trimmed Of Its Many Irrelevant And Scandalous Allegations

Rule 8 of the Federal Rules of Civil Procedure provides, in relevant part, that a complaint "shall contain ... a short and plain statement of the claim showing that the

pleader is entitled to relief." Rule 8(a)(2).  Additionally, Rule 8(e)(1) provides that "[e]ach averment of a pleading shall be simple, concise, and direct."  The purpose of Rule 8 is to ensure that courts and adverse parties can understand a claim and frame a response to it. *See Resource NE of Long Island v. Town of Babylon*, 28 F. Supp.2d 786, 794 (E.D.N.Y. 1998).

Rule 12(f) of the Federal Rules of Civil Procedure permits the court to strike "redundant, immaterial, impertinent, or scandalous matter" in the pleadings at a party's request.  Although the standard is high, matters that "can have no possible bearing" on the issues before the Court are properly stricken.  *Lipsky v. Commonwealth United Corp.*, 551 F. 2d 887, 894 (2d Cir. 1976).

Even the most cursory review of the Complaint reveals that the vast majority of the allegations are neither simple, concise nor direct.  Neither the Court nor defendants should be required to wade through the abundance of extraneous information in this complaint in order to determine the content of the allegations.  As in *Salahuddin v. Cuomo*, 861 F. 2d 40 (2d Cir. 1988), "there is no doubt that (the) complaint fails to comply with Rule 8's 'short and plain statement' requirement." *Id*. at 43.

In *Resource NE, supra,* the plaintiff's complaint was dismissed as unnecessarily prolix in violation of Rule 8.  There, the Eastern District reviewed the *Salahuddin* decision and stated:

> With these standards in mind, it becomes "pointedly clear the Complaint ... runs afoul of Rule 8. Indeed, the prolixity of the pleading is greatly compounded by its [occasionally] vague ... allegations. Forcing defendants to answer such a pleading would fly in the face of the very purposes for which Rule 8 exists, [by placing] an unjustified burden on the court and the [parties] who must respond to it because they are forced to select the relevant material from a mass of verbiage."

*Id.,* at 796, quoting *Lonesome v. Lebedeff, 141 F.R.D. 397, 398* (E.D.N.Y. 1992).

"When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial, *see* Fed.R.Civ.P, 12(f), or to dismiss the complaint." *Salahuddin, supra,* 861 F. 2d at 42.  "Even relevant portions of a complaint may be stricken where they are scandalous and are set out in needless detail. 2A J. Moore, Federal Practice ¶ 12.21, at 2313." *Gleason v. Chain Service Restaurant,* 300 F. Supp. 1241, 1257 (S.D.N.Y 1969).

Here, the Complaint is encumbered by irrelevant and extraneous information, which severely inhibits defendants' ability to respond to it without sifting through "the relevant material from a mass of verbiage." *Lonesome v. Lebedeff, 141 F.R.D. 397, 398* (E.D.N.Y. 1992).  Although the entire complaint is saddled with plaintiffs' inappropriate editorializing, it is particularly in ¶s 31-34 that plaintiffs hurl irrelevant accusations of alleged wrongs committed by the defendants.  This course of immaterial and scandalous allegations concludes with ¶ 34's statement that "[c]ountless violations and instances of

fraud by all the Defendants show a pattern of wanton disregard for the rights and property of others." Paragraphs 31-34 should be stricken from the complaint.

Paragraph 21 states that the residences in One57 "have already sold for prices of up to $90 million." Even if true, there is simply no reason for plaintiffs to include that information in their complaint as the cost of units within One57 is not relevant to any of plaintiffs' claims, which are all premised upon defendants' alleged negligence. *See Gleason* at 1259-1260. The cost of the units is simply not an element of, and bears no conceivable relevance to, any of plaintiffs' claims. *Id.* Accordingly, Paragraph Twenty-One's references to cost and luxury should be stricken.

Paragraphs 29 and 30 should also be stricken as immaterial, since Donald Trump and the television commentator's observations and opinion regarding the crane are inadmissible and irrelevant. Neither man is authorized to render an expert opinion in connection with this case. The inclusion of their opinions at the pleading stage provides plaintiffs with the opportunity to advance expert testimony without satisfying the applicable Rules of Evidence, which is manifestly unfair to all of the defendants.

## CONCLUSION

For the reasons stated above, plaintiffs' complaint must be dismissed in its entirety pursuant to Rule 12(b)(6) because plaintiffs have failed to state any claim upon which relief can be granted.  In the alternative, Pinnacle seeks dismissal of plaintiffs' First Amended Class Action Complaint pursuant to Rules 12(f) and 8 of the Federal Rules of Civil Procedure and/or an Order striking designated paragraphs as immaterial and/or scandalous, together with costs and attorney's fees and such other and further relief as this Court deems just, proper and equitable.

Dated:   White Plains, New York
         October 31, 2014

Respectfully submitted,

Richard W. Ashnault (RA 3567)
CERUSSI & SPRING
Attorneys for Defendant
PINNACLE INDUSTRIES II, LLC
One North Broadway – Suite 1100
White Plains, New York  10601-1700
Tel. No.:  (914) 948-1200