UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

MUSIKANT & DEUTSCH, D.M.D., P.C., ANGELO'S
PIZZA, LOUIS DICARLO, and CAROLINE F.
STERN, D.D.S., P.C., individually and on behalf of all
others similarly situated,

         Plaintiffs,

    - against -

LEND LEASE (US) CONSTRUCTION HOLDINGS
INC., LEND LEASE (US) CONSTRUCTION INC.,
LEND LEASE (US) CONSTRUCTION LMB INC.,
PINNACLE INDUSTRIES II, LLC, and EXTELL
DEVELOPMENT COMPANY,

         Defendants.
-------------------------------------------------------------- X

12 Civ. 8207 (ALC)

**MEMORANDUM &
ORDER**

**ANDREW L. CARTER, JR., District Judge:**

  Plaintiffs Musikant & Deutsch, D.M.D., P.C. ("Musikant"), Angelo's Pizza ("Angelo's"), Louis DiCarlo ("DiCarlo"), and Caroline F. Stern, D.D.S, P.C. ("Stern") (collectively, "Plaintiffs") invoke the Court's diversity jurisdiction, 28 U.S.C. § 1332(d)(2)(A),[1] in bringing this action individually and on behalf of similarly situated persons against Lend Lease (US) Construction Holdings Inc., Lend Lease (US) Construction Inc., and Lend Lease (US) Construction LMB, Inc. (collectively, "Lend Lease"), as well as Pinnacle Industries II, LLC ("Pinnacle") and Extell Development Company ("Extell") (collectively, "Defendants") alleging negligence, gross negligence, public nuisance, and private nuisance under New York common

---

[1] "The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which ... any member of a class of plaintiffs is a citizen of a State different from any defendant."

1

law.[2] Specifically, Plaintiffs allege Defendants failed to adequately prepare, maintain, operate, and secure a crane at Defendants' development project located at 157 West 57th Street in Manhattan ("One57"), and that those failures leading up to Hurricane Sandy resulted in the crane's partial collapse and city officials' week-long evacuation of the area. Plaintiffs seek recovery for alleged property damage in the form of loss of use and enjoyment of their property, as well as consequential economic losses.

Defendants move to dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. They also move to strike aspects of that document pursuant to Rule 12(f), with Defendant Pinnacle citing Rule 8 as another basis. The respective Motions to Dismiss the First Amended Complaint are GRANTED in part and DENIED in part, while the Motions to Strike are DENIED. Specifically, each of Plaintiffs' claims is DISMISSED except for the named Plaintiffs' individual claims for private nuisance, over which the Court declines to exercise supplemental jurisdiction. Moreover, Plaintiffs' Motion for Leave to Amend is DENIED.

## BACKGROUND

As set forth in the First Amended Complaint, during the events at issue, Defendants were engaged in the construction of One57, a 90-story skyscraper located at 157 West 57th Street in Manhattan. First Amended Complaint ("FAC") ¶¶ 20-21, ECF No. 1. Extell is the developer, Lend Lease is responsible for construction, and Pinnacle owns and operates the construction crane. Id. ¶ 21. Extell, like each of the Land Lease Defendants, is a corporation whose principal

---

[2] In their Opposition to Defendants' Motions to Dismiss, Plaintiffs voluntarily dismiss Counts III, IV, and V. Pls.' Opp. Defs.' Mot. Dismiss 2, ECF No. 53.

place of business is New York. *Id.* ¶¶ 12-15. Pinnacle, too, is a citizen of New York. ECF No. 57.

Musikant is a New York corporation whose principal place of business is 119 West 57th Street in Manhattan, which is adjacent to One57. *Id.* ¶ 7. Musikant specializes in endodontic emergency care. *Id.* ¶¶ 41, 44. Angelo's is a New York corporation whose principal place of business is 117 West 57th Street, also adjacent to One57. *Id.* ¶¶ 8, 35. Angelo's is an Italian restaurant and pizzeria. *Id.* ¶ 35. DiCarlo is a private citizen whose only residence in the United States is 130 West 57th Street, where he also works as CEO of Shuella, Inc. *Id.* ¶ 60. DiCarlo's address is adjacent to One57. *Id.* Stern is a general dentistry practice located at 119 West 57th Street, which is adjacent to One57. *Id.* ¶ 68.

Construction of One57 began in April 2009. *Id.* ¶ 20. On October 29, 2012 Hurricane Sandy hit New York City. *Id.* ¶ 22. An MSNBC news report indicated that "all crane operators were told by the New York City Government to 'secure their cranes' prior to" the hurricane's arrival. *Id.* ¶ 30. According to an eyewitness account on CNBC, Defendants set the boom of the crane "at a very high angle," which a renowned crane accident investigator characterized on MSNBC as inadequate preparation for the storm. *Id.* ¶¶ 29-30. Additionally, Defendants failed to set the brake of the crane to the off position so that it could "weathervane, or rotate along with the wind." *Id.* ¶ 27. The failure to take these precautions departed from the industry standard, and as a result of these non-standard practices, the crane at One57 partially collapsed—dangling approximately 1,000 feet above street level and "sending debris and glass" onto one of the streets below. *Id.* ¶¶ 22, 27.

In response to the risk that the crane would completely collapse, the Fire Department of New York and the New York City Office of Emergency Management (collectively, "city

3

officials") evacuated all buildings on the north and south sides of West 57th Street between Sixth and Seventh Avenues, as well as from 56th to 59th Streets (collectively, "the Evacuation Zone"). *Id.* ¶ 23. City officials shut off all gas and steam to the area out of fear that if the crane fell it would cause an explosion. *Id.* ¶ 24. The evacuation period lasted until November 5, 2012, during which time businesses were unable to operate. *Id.* ¶ 4.

The named Plaintiffs in this class action are located within the Evacuation Zone and allege numerous consequential harms. *See generally id.* ¶¶ 35-71. Musikant, Angelo's, and Stern cite the loss of use and enjoyment of their premises, which in turn resulted in lost profits and harm to their goodwill and reputations.[3] *Id.* ¶¶ 38, 40, 50-51, 54, 59, 71. Additionally, Musikant describes the spoliation of equipment and Angelo's alleges spoiled food valued at approximately $30,000. *Id.* ¶¶ 39, 52.

DiCarlo, for his part, points to the loss of use and enjoyment of his home, $250 of spoiled food, and $800 for each day of the evacuation period that he spent on lodging at the nearby Plaza Hotel, which he contends was the only hotel where he could find a room. *Id.* ¶¶ 64-67. In addition, DiCarlo alleges emotional distress and humiliation resulting from the fact that he witnessed the crane's partial collapse, believed that that the building next to his would completely collapse on impact, and fled his building believing that he might die. *Id.* ¶¶ 61, 66. No direct physical intrusion by the crane onto any of the named Plaintiffs' properties is averred. *See generally* FAC.

Angelo's, Musikant, and Stern seek to represent a class defined as "all business evacuated from the Evacuation Zone during the Evacuation Period." *Id.* ¶ 72. DiCarlo seeks to represent a class defined as "all residents evacuated from the Evacuation Zone during the

---

[3] They do not specify the amount of goodwill or degree of reputational loss, or its precise impact on the value of their businesses. *See generally* FAC.

Evacuation Period." *Id.* ¶ 73. Angelo's, Musikant, and DiCarlo seek to represent a class defined as "all persons or entities whose property located within the Evacuation Zone was destroyed or diminished in value as a result of the crane collapse and ensuing evacuation." *Id.* ¶ 74.

## STANDARD OF REVIEW

To withstand a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint "need not include detailed factual allegations, but must contain sufficient factual matter ... to state a claim to relief that is plausible on its face." *Corona Realty Holding, LLC v. Town of N. Hempstead*, 382 F. App'x 70, 71 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations omitted).

## DISCUSSION

I.  **The Negligence and Gross Negligence Claims**

Defendants argue that Plaintiffs' claims are barred by the economic loss rule. In *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, the New York Court of Appeals prohibited recovery for purely economic losses that had no antecedent property damage or personal injury. 96 N.Y.2d. 280, 291-92 (2001). In resolving consolidated cases, New York's highest court covered facts similar to those in the instant matter. For example, the collapse of a 48-story construction elevator and an ensuing evacuation period had caused plaintiffs, area business owners, to lose customers and profits. *Id.* at 287. The court rejected the plaintiffs' attempts to define the scope of the defendants' duty to them through use of a geographical zone around the accident, citing cases in which, as a policy matter, and despite the foreseeability of plaintiffs' injuries, the court had restricted liability out of a concern for the potential "crushing"

5

or "limitless" exposure for defendants. *Id.* at 289, 90; *see also id.* at 291 ("an indeterminate group in the affected areas thus may have provable financial losses directly traceable to the two construction-related collapses, with no satisfactory way geographically to distinguish among those who have suffered purely economic losses"). Thus, the court confined "the scope of defendants' duty to those who have . . . suffered personal injury or property damage—as historically courts have done." *Id.* at 291-92.

The Court first turns to determining whether sufficient facts exist to plead personal injury. In Plaintiffs' Opposition, DiCarlo refers to a claim of emotional injury, although no such cause of action is explicitly included in the First Amended Complaint. *See generally* FAC. Even if such a cause of action had been adequately articulated, Plaintiffs' reliance on *Battistello v. E. 51st St. Dev. Co.*, 886 N.Y.S.2d 791 (N.Y. Sup. Ct. 2009) to establish an antecedent personal injury is inapt. The trial court in *Battistello*, after explaining that "there may be recovery for the emotional harm ... to one subjected *directly* to the negligence of another as long as the psychic injury was genuine, substantial, and proximately caused by the defendant's conduct," *id.* at 864 (emphasis in original), declined to dismiss a plaintiff's claim for emotional distress based on her testimony that she was physically standing in her apartment when a crane collapsed and came into contact with the unit, *id.* at 866. The crane "absolutely smashed" into her terrace, sent her floor tiles up to the ceiling, and broke her windows. *Id.* "[S]he left the apartment in fear, running down the 18 flights of stairs to get out of the building." *Id.* By contrast, although DiCarlo thought "that he might die," he witnessed the collapse of the crane "from his window" and believed that it would cause the collapse of a "building *adjacent* to him." FAC ¶ 61 (emphasis added). As a result, the Court finds that DiCarlo's allegations do not rise to the level

6

of emotional injury cognizable at law. No other personal injury-related allegations appear in the First Amended Complaint. *See generally* FAC.

The Court now considers the extent to which Plaintiffs have alleged property damage. In *532 Madison*, the Court of Appeals analyzed the requirements of property damage using a comparison of *Beck v. FMC Corp.*, 53 A.D.2d 118 (N.Y. App. Div. 4th Dep't 1976), *aff'd* 42 N.Y.2d 1027 (1977) and *Dunlop Tire & Rubber Corp. v FMC Corp.*, 53 A.D.2d 150 (N.Y. App. Div. 4th Dep't 1976). 96 N.Y.2d at 290.

> Those cases arose out of the same incident: an explosion at defendant FMC's chemical manufacturing plant caused physical vibrations, *and rained stones and debris onto plaintiff Dunlop Tire's nearby factory*. The blast also caused a loss of electrical power—by destroying towers and distribution lines owned by a utility—to both Dunlop Tire and a Chevrolet plant located one and one-half miles away. Both establishments suffered temporary closure after the accident. Plaintiffs in *Beck* were employees of the Chevrolet plant who sought damages for lost wages caused by the plant closure. Plaintiff Dunlop Tire sought recovery for property damage emanating from the blast and the loss of energy, and lost profits sustained during the shutdown.

*Id.* (emphasis added). Noting the presence of "direct physical contact" in *Dunlop Tire* as the difference between the cases, the Court of Appeals described how the *Dunlop Tire* plaintiffs had adequately pleaded property damage while the *Beck* plaintiffs had alleged mere economic losses. *Id.* Here, it follows that for Plaintiffs to recover economic losses under *532 Madison* they must allege direct physical contact as a basis for antecedent property damage.

Although the losses alleged in the present matter are substantial, the Court finds that Plaintiffs have not adequately pleaded property damage. Plaintiffs have not alleged the "direct physical contact" that would enable recovery for pure economic losses like spoiled food and lost business opportunities. *See generally* FAC. Instead, Plaintiffs contend the loss of use of their premises itself constitutes property damage. But the plaintiffs in *532 Madison* also suffered loss of use and enjoyment of their premises due to evacuation, and their claims were still dismissed.

96 N.Y.2d at 286-88. Moreover, the cases Plaintiffs marshal as support for their argument contain evidence of direct physical contact. *See In re September 11 Litig.*, 760 F. Supp. 2d 433, 442 (S.D.N.Y. 2011) (crashing of airplane into Tower One of the World Trade Center); *Syracuse Cablesystems, Inc. v. Niagara Mohawk Power Co.*, 173 A.D.2d 138, 140 (N.Y. App. Div. 4th Dep't 1991) (oil containing PCB leaked into building, resulting in "physical damage to clothing, office supplies and equipment"); *Black v. George Weston Bakeries, Inc.*, No. 07 Civ. 853S, 2008 WL 4911791, at *1 (W.D.N.Y. Nov. 13, 2008) (involving release from defendants' property of mold spores that coated the plaintiffs' properties). Other cited cases relate to loss of use as defined by a contract in an insurance claim—which is not at issue here. *See, e.g, Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178, 1187 (2d Cir. 1995) ("Under the terms of the policies at issue …. 'property damage' is defined to include physical injury to or destruction of tangible property, *including the loss of use*.") (emphasis added).

Clearly, Plaintiffs' allegations do not rise to the level of personal injury or property damage under *532 Madison*. Like the defendants in that case, Lend Lease, Pinnacle, and Extell owed no duty to Plaintiffs despite their allegations of substantial harm. As such, the negligence and gross negligence counts must be dismissed. *532 Madison*, 96 N.Y.2d at 292 ("We therefore conclude that plaintiffs' negligence claims based on economic loss alone fall beyond the scope of the duty owed them by defendants and should be dismissed.").

## II.     The Public and Private Nuisance Claims

"A public nuisance exists for conduct that amounts to a substantial interference with the exercise of a common right of the public, thereby offending public morals, interfering with the use by the public of a public place or endangering or injuring the property, health, safety or comfort of a considerable number of persons." *532 Madison*, 96 N.Y.2d at 292. That said, "[a]

8

nuisance, either public or private, based on negligence and whether characterized as either negligence or nuisance, is but a single wrong, and whenever a nuisance has its origin in negligence, negligence must be proven." *Copart Indus., Inc. v. Consol. Edison Co. of N.Y.*, 41 N.Y.2d 564, 569 (1977) (internal quotation marks omitted) (citation omitted). Plaintiffs expressly plead that their public nuisance claim arose "as a result of" Defendants' "negligence and/or gross negligence in the preparation, maintenance, operation, and securing" of the crane. FAC ¶ 107. Since the Court has already held that no duty existed with respect to Plaintiffs' negligence claims, Plaintiffs' negligence-based public nuisance claims are not viable.

However, even if Plaintiffs' allegations did not predicate public nuisance liability on a finding of negligence or gross negligence, the public nuisance claims would still fail because Plaintiffs have not demonstrated injuries that sufficiently differentiate them from their respective classes so as to confer standing to prosecute. *See 532 Madison*, 96 N.Y.2d at 294 (citing approvingly an Appellate Division ruling that as it concerned business owners and residents of Times Square and Madison Avenue, because "the economic loss was common to an entire community and the plaintiffs suffered it only in a greater degree than others, it is not a different kind of harm and the plaintiffs cannot recover for the invasion of the public right") (internal quotation marks omitted) (brackets omitted).

"A private nuisance differs from a public nuisance, which is interference with a public right." *Black v. George Weston Bakeries, Inc.*, No. 07 Civ. 853S, 2008 WL 4911791, at *6 (W.D.N.Y. Nov. 13, 2008). "A private nuisance threatens one person or a relatively few, an essential feature being an interference with the use or enjoyment of land." *Copart*, 41 N.Y.2d at 568 (citations omitted). Here, Plaintiffs allege private nuisance "individually and on behalf" of classes that "number in the thousands." FAC ¶¶ 75, 112. The individual theories are for a

9

"relatively few" people, but the class claims do not meet the numerical bar for private nuisance actions in New York. *See, e.g., A & L Gift Shop v. ASA Waterproofing Corp.*, No. 100405/02, 2005 N.Y. Misc. LEXIS 8470, at *8 (Sup. Ct. Dec. 6, 2005) (finding more than a "relatively few" were threatened by a street closing where, aside from "the twenty-eight Plaintiffs, all taxi drivers or suppliers delivering to that street were also affected"). As a result, the Court severs the private nuisance class claims and dismisses them, preserving only the private nuisance claims of the named Plaintiffs, jurisdiction over which is discussed *infra* Part V.

### III.   Request to Strike Allegations

Pinnacle argues that the First Amended Complaint should be dismissed or stricken pursuant to Fed. R. Civ. P. 8. Rule 8 requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Each allegation must be "simple, concise, and direct," Fed. R. Civ. P. 8(d)(1), such that the adverse party is given "fair notice of the claim asserted so as to enable him to answer and prepare for trial," *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Failure to comply with the requirement that a complaint be short and plain enables a court to strike—*sua sponte* or at the request of a party—any portions that are redundant or immaterial, *see* Fed. R. Civ. P. 12(f), or to dismiss the complaint, *Salahuddin*, 861 F.2d at 42. "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.*

The Court finds no Rule 8 basis on which to dismiss the First Amended Complaint. Plaintiffs' allegations form a clear and coherent narrative that incorporates eyewitness accounts, Defendants' past conduct, and the injuries sustained by Plaintiffs resulting from Defendants' inadequate preparation, maintenance, operation, and securing of the crane. It follows that

Defendants have been given "fair notice" of the factual allegations for the negligence, gross negligence, and public and private nuisance claims Plaintiffs assert. As a result, dismissal on the basis of Rule 8 is unwarranted.

"In deciding whether to strike [pursuant to] a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). Material characterized as "immaterial, scandalous, and prejudicial" may be stricken only if a defendant demonstrates "no possible bearing" between the material and the dispute before the court. *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009) (internal quotation marks omitted).

According to Defendants, paragraphs 31-34 of the First Amended Complaint should be stricken as irrelevant and immaterial past conduct. A party's past conduct is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" on the part of a defendant. Fed. R. Evid. 404(b)(2). Paragraph 31 references an alleged pattern of past negligent conduct by Pinnacle. Paragraph 32 relates to a news report corroborating Plaintiffs' allegation that the crane was improperly secured. Although the quoted remarks also insinuate that Extell has a reputation for poor safety, amounting to inadmissible character evidence, Fed. R. Evid. 404(a)(1), the piece is part of the public record, so there is no real prejudice to Defendants, s*ee Century Indem. Co. v. Certain Underwriters at Lloyd's London*, No. 11 Civ. 1040, 2012 WL 104773 at *5 (S.D.N.Y. Jan 10, 2012) (denying motion to strike factual background because it was already publicly available). Paragraph 34 alleges a "pattern of wanton disregard for the rights and property of others," which can be interpreted as being based on paragraphs 31 and 32.

Paragraph 33 speaks to Lend Lease's past settlements for fraud and labor violations. Once again, the information is publicly available, so Defendants are not further meaningfully prejudiced by Plaintiffs' reference to it. *See id.* Defendants also seek to exclude Paragraphs 29 and 30, which reflect an alleged eyewitness report by Donald Trump and an MSNBC story featuring an expert opinion on the crane collapse. These reports may have bearing on the matter at hand as the case unfolds. *See Footbridge Ltd. v. Countrywide Home Loans, Inc.*, No. 09 Civ. 4050, 2010 WL 3790810, at *5-*6 (S.D.N.Y. Sept. 28, 2010) (denying motion to strike where news reports provided the bulk of the allegations). Pinnacle further seeks to exclude Paragraph 21, which contains the sales prices for units at One57. That information, too, is readily accessible in the public record. *See Century*, 2012 WL 104773 at *5.

## IV. Request for Leave to Amend

Fed. R. Civ. P. 15(a)(2) provides that a party may amend its pleading more than once "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." However, the rule also affords the Court "considerable discretion to deny amendment when there has been undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Knife Rights, Inc. v. Vance*, No. 13 Civ. 4840, 2015 WL 5559751, at *9 (2d Cir. Sept. 22, 2015) (brackets in original) (internal quotation marks omitted).

Plaintiffs were granted leave to amend their allegations once before, after Defendants Land Lease and Extell outlined the legal theories to be included in their contemplated Motion to Dismiss in a letter dated December 14, 2012 requesting a Pre-Motion Conference. ECF No. 7. The arguments in Land Lease's and Extell's Motion to Dismiss mirror those in the Motion to

Dismiss filed by Pinnacle. The result of granting Plaintiffs' first request for leave to amend was the First Amended Complaint on which this Memorandum and Order is based. As noted *supra* note 2, of the seven Counts alleged in the First Amended Complaint, Plaintiffs voluntarily dismissed three in their Opposition brief. Notably, Plaintiffs do not describe how they wish to further amend the First Amended Complaint. In light of the particular facts of this case, including the nature of the allegations, the Court determines that leave to amend would be futile. Plaintiffs' request is denied.

### V. Supplemental Jurisdiction

A federal district court may refrain from exercising supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Court does not have original jurisdiction over the individual private nuisance claims because they are non-federal causes of action, *see* 28 U.S.C. § 1367, and there is no diversity jurisdiction because even if Plaintiffs could show that the amount in controversy exceeds $75,000, Plaintiffs and Defendants are all New York citizens, *see* 28 U.S.C. § 1332(a). Accordingly, in its discretion, the Court declines to exercise jurisdiction.

### CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are GRANTED in part and DENIED in part, and their Motions to Strike are DENIED. Plaintiffs' Motion for Leave to Amend is DENIED. All that is left are the named Plaintiffs' individual private nuisance claims, over which the Court declines to exercise supplemental jurisdiction. The Clerk of Court is respectfully directed to terminate ECF Nos. 45 and 47 and close this case.

**SO ORDERED.**

Dated:  New York, New York
        September 28, 2015

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**